IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HOWARD W. WILSON, #K02002, | ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| JOHN BALDWIN, KESS ROBERSON, BUTLER-JONES, MITTLEMAN, PATRICK T. SINGLETON, KOONTZ, SHERRY BENTON, JOHN/JANE DOE 1-5, MATHEW C. SWALLS, BARWICK, LUCE, CONNIE HOUSTON, MARIBETH ETHRIDGE-HICKS, ANGELA MCCANN, LAURA LONG, POTOCKI, and JOHN/JANE DOE 6-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

Case No. 19-cv-00732-SMY

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Howard Wilson, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Vienna Correctional Center ("Vienna"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. He requests a declaratory judgment, injunctive relief, and monetary damages.

Plaintiff's Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out

1

non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). The Court also must determine whether misjoinder is an issue and retains authority to sever unrelated claims against different defendants into one or more additional lawsuits. *See George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

## The Complaint

Plaintiff makes the following allegations regarding allegedly unconstitutional handling of his mail and processing of his grievances during his time at Lincoln Correctional Center ("Lincoln") and Vienna. (Doc. 1):

### *Lincoln Correctional Center*

While at Lincoln, Plaintiff was employed as a Greenhouse Specialist. *Id.* at p. 12. In June 2018, he and other inmates began experiencing respiratory problems and severe allergy-like symptoms. Plaintiff submitted Freedom of Information Act ("FOIA") requests to the Illinois Environmental Protection Agency and the Illinois Department of Public Health asking for public records related to the health effects of exposure to mold and mildew. *Id.* at pp. 12-13. On July 6, 2018, he received various public records from the Illinois Department of Public Health pertaining to mold and mildew. *Id.* at p. 13. Because Plaintiff's requests to governmental agencies are not recognized as privileged or legal mail, his mail was placed in unsealed envelopes so that the mail room staff had opportunities to inspect and read his mail.

After Plaintiff submitted the requests for public documents and received the information, staff members began treating him unusually. *Id.* On one occasion, a corrections officer asked him if he had written to the EPA. *Id.* In another instance, an envelope containing a motion he was

trying to file in a state civil case was not sent certified mail as requested, and the Champaign County Circuit Clerk never received the motion. *Id.* at pp. 14, 15, 59, 64.

Plaintiff filed two grievances regarding the mishandling of his mail ("Grievance 1" and "Grievance 2"). In Grievance 1, Plaintiff requested an explanation for why his certified mail service request was not honored, and in Grievance 2, he asked for an explanation and reimbursement for financial burdens incurred for the untimely filing of the legal documents. *Id*. at p. 15.

On September 12, 2018, Plaintiff met with Defendants Corrections Counselor Koontz, Caseworker Supervisor Singleton, and Clinical Services Supervisor Mittleman. *Id.* at p. 16. Koontz told Plaintiff that he would not be allowed to attach additional pages to his grievances and would have to take Grievance 2 back. After being questioned by Defendants about emails received from the Assistant State's Attorney in his civil case and the use of intimidation tactics by Defendants aimed at "making Grievance 2 disappear", Plaintiff was allowed to leave. *Id.* at pp. 17, 18.

Following the meeting, Plaintiff told Koontz he had submitted another grievance ("Grievance 3") regarding inadequate health care at Lincoln, which also included additional pages and documents. Koontz told Plaintiff Grievance 3 would also not be processed because of the additional pages and that his bosses told him not to process Grievances 2 and 3. *Id.* at p. 18. Plaintiff understood "bosses" to mean Defendants Warden Roberson, Mittleman, and Singleton. *Id.* at p. 19.

Plaintiff then submitted another grievance ("Grievance 4") regarding the mishandling of Grievances 2 and 3 and recounting the meeting with Koontz, Singleton, and Mittleman. *Id*. A few days later, he received a response to Grievance 4 that was signed by Singleton, stating that Plaintiff

was not denied the right to file a grievance, but was instructed on the proper procedure for filing a grievance. *Id.* at p. 20. Plaintiff then submitted Grievance 4 for second level review, which was again reviewed by Singleton. *Id.* at pp. 22, 87. Singleton's response was in violation of Illinois Administrative Code, which prohibits a person directly involved in the subject of the grievance from serving as the reviewing grievance officer and also contained false statements. *Id.*

Plaintiff filed an appeal of Grievance 4 with the Administrative Review Board ("ARB") and Defendant IDOC Director Baldwin. *Id.* at p. 25. Ultimately, the ARB ruled that Plaintiff had submitted Grievance 2 and 3 in accordance with the Offender Grievance Process, and ruled Grievance 2 moot. *Id.* at pp. 30-31. The ARB did not address the conduct of Koontz, Mittleman, or Singleton, and by finding Grievance 2 moot, concealed the actions of IDOC employees. *Id.* Late in December 2018, Plaintiff was abruptly transferred from Lincoln to Vienna and was terminated from his job assignment as a Greenhouse Specialist. *Id* at p. 25.

*Vienna Correctional Center*

Plaintiff claims he has had similar experiences regarding staff misconduct in the processing of his mail and grievances at Vienna. Plaintiff's mail has been repeatedly mishandled by mailroom staff. He has been overcharged for three mailings sent certified mail. *Id.* at p. 37. His legal and privileged mail has been (1) opened while he was not present; (2) given to someone else on at least two separate occasions; and (3) sent without a return receipt as requested. *Id.* at p. 29, 30, 33, 37, 39. One letter addressed to a sheriff's office and labeled "privileged mail" was returned to Plaintiff and marked "non-privileged mail which must be unsealed," contrary to a Vienna Institutional Directive. *Id.* at pp. 28, 105. Another letter Plaintiff mailed to his mother was returned to him marked "No third party." Although Plaintiff submitted a request to mailroom staff asking for further explanation, he never received a response, and after resubmitting the letter to be mailed a

4

second time, still does not know if it was ever sent. *Id.* at pp. 31-32. In March 2019, Plaintiff received one set of legal documents 17 days after the envelope was postmarked and another set 11 days after postmarked. *Id.* at p. 34. He also never received an envelope of documents sent to him by an assistant attorney general. Because he did not receive his mail in timely fashion, he was not able to argue against the defendant's motion in another civil case, and the motion was subsequently granted. *Id.* at p. 34.

Plaintiff has contacted and met with staff and filed grievances regarding the mishandling of his mail. *See Id.* at pp. 28-29, 34, 35, 38. He filed three grievances regarding the problems with the mail policies ("Vienna Grievance 1," "Vienna Grievance 2," and "Vienna Grievance 3"). Vienna Grievance 1 included attached documents that were not on the facility's grievance forms and marked as an emergency. *Id.* at pp. 32-33. That grievance was returned to Plaintiff with no response. *Id.* at p. 34. After submitting the grievance a second time, it was again returned with a sheet stating that Plaintiff must submit the additional pages of his grievance on grievance forms. *Id.* at p. 35. He later learned the note was written by Defendant Correctional Counselor Ethridge-Hicks. *Id.* at p. 36. Plaintiff appealed, and the ARB deemed Vienna Grievance 1 not an emergency and, in its response, wrote "Now process through DR 504 F." *Id.* at p. 39. Although Plaintiff resubmitted Vienna Grievance 1, it was not processed. *Id.*

Plaintiff attempted to appeal the response to Vienna Grievance 2 but received no response when he requested complete copies from Defendant Grievance Officer Long. *Id.* at pp. 36. He submitted an offender request slip with the Housing Unit 1 Counselor, and the request for copies was denied. *Id.* at p. 37.

Vienna Grievance 3 was denied by Defendant Warden Swalls on Long's recommendation, despite a corroborating statement by a corrections officer in the grievance response that there are

5

issues in the mail handling. *Id.* at pp. 37-38. Upon Plaintiff filing an appeal of Vienna Grievance 3, the ARB ruled that his privileged mail had been mishandled. However, the ARB members did not discipline the staff involved or consider the relief Plaintiff requested. *Id.* at p. 39.

Plaintiff's next grievance ("Vienna Grievance 4") was also returned unprocessed at the direction of Ethridge-Hicks. *Id.* at p. 37. Plaintiff submitted another grievance ("Vienna Grievance 5") regarding Ethridge-Hick's handling of grievances and failure to provide copies needed to appeal the grievance decisions. *Id.* at p. 38. He later met with Ethridge-Hicks and McCann. Ethridge-Hicks informed Plaintiff that she did not need to consider documents attached to grievances as exhibits and that she could not provide him copies of attachments he had previously submitted because she had thrown them away. *Id.*

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following fifteen counts:

**Count 1:** First Amendment retaliation claim against Mittleman, Singleton, and Koontz for impeding Plaintiff's ability to file grievances, transferring him to another prison, and terminating his job as a greenhouse specialist after he filed FOIA requests and grievances.

**Count 2:** First and Fourteenth Amendment claim against Roberson, Mittleman, Singleton, Koontz, Benton, and John/Jane Does 1-5 for denying and mishandling Plaintiff's grievances filed during his time at Lincoln.

**Count 3:** Illinois state law claim under 730 ILCS 5/3-8-8 and Ill. Admin. Code tit. 20 § 504 against Mittleman, Singleton, Koontz, Benton, and John/Jane Does 1-5 for refusing to properly process Plaintiff's grievances submitted while at Lincoln.

**Count 4:** Fourteenth Amendment equal protection claim against Mittleman, Singleton, Koontz, Benton, and John/Jane Doe 1-5 for impeding his access to the offender grievance process while at Lincoln.

**Count 5:** First Amendment and Fourteenth Amendment claim against Baldwin, Roberson, and Butler-Jones for failing to adequately train

6

|  |  |
|---|---|
| | and supervise subordinates resulting in the unconstitutional mishandling of Plaintiff's mail and grievances at Lincoln. |
| **Count 6:** | First Amendment claim for the mishandling of Plaintiff's mail while at Lincoln. |
| **Count 7:** | First Amendment retaliation claim against Houston, Ethridge-Hicks, McCann, Long, Potocki, and John/Jane Does 6-10. |
| **Count 8:** | First and Fourteenth Amendment claim against Houston, Ethridge-Hicks, McCann, Long, Swalls, Benton, and John/Jane Does 1-5 for the denying and mishandling Plaintiff's grievances during his time at Vienna. |
| **Count 9:** | Fourteenth Amendment equal protection claim against Houston, Ethridge-Hicks, McCann, Long, Benton, John/Jane Does 1-5, Potocki, and John/Jane Does 6-10 for impeding his access to the offender grievance process and in the processing of his mail while at Vienna. |
| **Count 10:** | First Amendment and Fourteenth Amendment claim against Baldwin, Swalls, Barwick, and Luce for failing to adequately train and supervise subordinates resulting in the unconstitutional mishandling of Plaintiff's mail and grievances at Vienna. |
| **Count 11:** | First Amendment and Fourteenth Amendment denial of access to courts claim against Potocki and John/Jane Does 6-10 for the mishandling of Plaintiff's legal and privileged mail. |
| **Count 12:** | First Amendment free speech claim against Potocki and John/Jane Does 6-10 for repeatedly mishandling Plaintiff's incoming and outgoing mail. |
| **Count 13**: | Fourth Amendment claim against Potocki and John/Jane Does 6-10 right to be free from search and seizure. |
| **Count 14**: | Illinois state law claim under 730 ILCS 5/3-8-8 and Ill. Admin. Code tit. 20 § 504 against Ethridge-Hicks, McCann, Benton, and John/Jane Does 1-5 for refusing to properly process Plaintiff's grievances submitted while at Vienna. |
| **Count 15:** | Illinois state law claim under 730 ILCS 5/3-2-2 and Admin. Code tit. 20 § 525 against Potocki and John/Jane Does 6-10 for refusing to properly process Plaintiff's mail at Vienna. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

## Severance

Federal Rule of Civil Procedure 20 prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Pursuant to the Rule, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each defendant that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *George*, 507 F.3d at 607. Rule 18, which allows a party to join unrelated claims against defendants in a lawsuit, applies only after the requirements for joinder of parties have been satisfied under Rule 20. *Intercon Research Ass'n, Ltd. v. Dresser Ind., Inc*., 696 F.2d 53, 57 (7th Cir. 1983) (citing 7 Charles Alan Wright et al., *Federal Practice & Procedure*).

Here, Plaintiff claims all defendants, as employees of IDOC, engaged in similar unconstitutional conduct regarding the mishandling of his mail and grievances and implementing IDOC policies. *See* Doc. 1, pp. 3, 40- 55. Despite similar alleged conduct occurring at Lincoln and Vienna, Plaintiff asserts two distinct groups of claims against different defendants that arise from occurrences at two different facilities; they cannot proceed together in the same lawsuit. While Plaintiff claims it "would seem logical" that he was prohibited from attaching additional documents to his grievances at Vienna because Defendants from Lincoln "could" have spoken to

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

the defendants from Vienna about him (Doc. 1, p. 35), such speculation is not enough to escape severance. *See Austin v. Spiller,* No. 18-cv-1152-DRH, 2018 WL 3036129 ("the Seventh Circuit has still said that the districts should sever claims that occurred at different prisons, even where the plaintiff has alleged a conspiracy")(citing *See Owens v. Evans,* 878 F. 3d 559, 561 (7th Cir. 2017)). Accordingly, the Court exercises its authority under Rule 21 and severs the improperly joined claims. Plaintiff's claims related to conduct that occurred while he was at Lincoln (Counts 1-6) will be severed into a separate action and transferred to the proper venue. Counts 7-15, related to conduct that allegedly occurred while he was at Vienna, will be addressed in this case and reviewed pursuant to § 1915A.

## Discussion - Counts 7-15

### Count 7

A First Amendment retaliation claim arises where an inmate alleges "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted). While a plaintiff is not required to plead "detailed factual allegations," he must include in the Complaint "more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Wilson v. Ryker*, 451 F. App'x 588, 589 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Plaintiff alleges that Defendants Houston, Ethridge-Hicks, McCann, Long, Potocki, and John/Jane Does 6-10 engaged in conduct that was in violation of his "right to be free from retaliation." (Doc. 1, pp. 43, 44, 50). Other than this statement repeated for each defendant, he only describes retaliatory conduct by Ethridge-Hicks and McCann. Plaintiff alleges that Ethridge-Hicks and McCann filed an offender disciplinary referral against him for filing grievances, and as a result, he was prohibited from certain privileges. *Id.* at p. 44-45. Therefore, Count 7 will proceed against Ethridge-

Hicks and McCann, s*ee Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012), but not against Houston, Long, Potocki, or John/Jane Does 6-10.

**Count 8**

Plaintiff alleges that Houston, Ethridge-Hicks, McCann, Long, Swalls, Benton, and John/Jane Does 1-5 violated his First Amendment right to free speech and to redress governmental grievances and his Fourteenth Amendment right to due process by the mishandling of his grievances and reviews of those grievances filed while at Vienna. However, inmates do not have a constitutional right to an effective grievance procedure. *Antonelli v. Sheahan,* 81 F.3d 1422, 1430 (7th Cir. 1996). As such, the fact that prison officials denied, mishandled, or refused to consider grievances or claims raised by grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Additionally, the failure of prison officials to follow their own procedures does not, standing alone, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992). Count 8 will therefore be dismissed.

**Count 9**

An equal protection claim requires a plaintiff to establish that: (1) he is a member of a protected class; (2) he is otherwise similarly situated to members of the unprotected class; and (3) he was treated differently than members of the unprotected class. *McNabola v. Chicago Transit Auth.,* 10 F.3d 501, 513 (7th Cir. 1993). Absent discrimination based on membership in a protected class, an equal protection claim may arise where an inmate plaintiff is treated differently from other prisoners with no rational basis – also known as a "class of one." *Flynn v. Thatcher,* 819 F.3d 990, 991 (7th Cir. 2016).

Here, Plaintiff makes only conclusory assertions that Defendants Houston, Long, Ethridge-Hicks, McCann, Benton, and John/Jane Does 1-5 violated his right to equal protection and that Defendants Ethridge-Hicks, McCann, Benton, John/Jane Does 1-5, Potocki, and John/Jane Does 6-10 deprived him of his Fourteenth Amendment right to equal protection of the law as a "class of one". (Doc. 1, pp. 43, 44, 53, 54). He provides no supporting details. Because "[a] complaint which consists

of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)," *Palda v. General Dynamic Corp.*, 47 F.3d 872, 875 (7th Cir. 1995); *Jackson v. E.J. Brach Corp.*, 176 F.3d 971 (7th Cir. 1999), Count 9 will be dismissed without prejudice.

### Count 10

Plaintiff claims that Defendants Baldwin, as the Director of IDOC, Swalls, as the Warden of Vienna, Barwick, as Assistant Warden of Operations at Vienna, and Luce, as Assistant Warden of Programs at Vienna, had a duty to ensure that staff members were properly trained and supervised and that their failure to do so resulted in the deprivation of his constitutional rights. (Doc. 1, pp. 46-48). "Liability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for those of subordinates, or for failing to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper,* 910 F.3d 1027, 1029 (7th Cir. 2018). Additionally, while the Court is obligated to accept factual allegations as true, *see Smith v. Peters,* 631 F.3d 418, 419 (7th Cir. 2011), it "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* Other than repeating the same conclusory statement of law for each defendant regarding their "duty to ensure that subordinates were properly trained[,]" Plaintiff does not provide any information suggesting these defendants were personally involved in the alleged constitutional deprivations. The fact a defendant is in a position of authority cannot be the sole basis for liability. For these reasons, Count 10 will be dismissed.

### Count 11

Inmates have a First Amendment right to both send and receive mail, *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir.1999), but that right does not preclude prison officials from examining mail to ensure that it does not contain contraband. *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974). An inmate's legal mail, that is "mail designated as correspondence with an attorney," *Harrison v. Cty. of Cook. Ill.,* 364 F. App'x 250, 252 (7th Cir. 2010), is entitled to greater protections because of the potential for

interference with his right of access to the courts.[2] *Rowe,* 196 F.3d at 782. Thus, when a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials potentially violate the inmate's rights if they open the letter outside of the inmate's presence. *See Wolff*, 418 U.S. at 577; *Castillo v. Cook Cty. Mail Room Dep't,* 990 F.2d 304, 305–06 (7th Cir.1993).

Plaintiff claims that his "legal" and "privileged" mail have been opened outside of his presence in violation of the Constitution. He alleges that: (1) he was directed that his "privileged mail" containing legal documents to a sheriff's office was to remain unsealed; (2) he received two pieces of "legal mail" that had been opened and re-taped outside his presence; (3) "privileged mail" from the ARB had been opened prior to delivery; and (4) "legal mail" that contained documents relating to a legal action involving IDOC as a defendant was opened and taped prior to delivery. (Doc. 1, pp. 26, 28, 30, 33). It does not appear from the Complaint, however, that any of the mail that was opened was from an attorney who either was representing Plaintiff or from whom he sought legal representation, affording him the right to be present when the mail was opened. *Kaufman v. McCaughtry*, 419 F. 3d 678, 686 (7th Cir. 2005) (no constitutional violation occurred for opening inmate's correspondence that was not with an attorney who represented him, and where inmate was not seeking representation from the attorney). Construing the Complaint liberally, and even assuming the "legal mail" was from an attorney representing Plaintiff, he has not sufficiently alleged that the opening of any legal mail prejudiced or hindered his ability to pursue a legal claim or defense. *Guajardo-Palma,* 622 F.3d at 805-06.

---

[2] The Seventh Circuit has clarified that, because a confidential communication with a lawyer is aimed to win a case rather than to enrich the marketplace of ideas, it is "more straightforward" to view an interference with legal mail claim as infringing on the right of access to the courts as opposed to the right of free speech. *Guajardo-Palma v. Martinson*, 622 F.3d 801, 801, 803 (7th Cir. 2010) (prison official reading mail to or from prisoners who sue them "is like a litigant's eavesdropping on conferences between his opponent and the opponent's lawyer."); *see also Delgado v. Godinez*, 683 F. App'x 528, 529 (7th Cir. 2017).

However, Plaintiff will be allowed to proceed with his claim of denial of access to the courts based on Defendants Potocki and mailroom staff John/Jane Does 6-10 delaying and denying the receipt of mail related to a state civil action. Plaintiff alleges Defendants' deliberate conduct caused a detriment to his ability to pursue his claim because, due to the delay and failure to deliver mail, he was unable to argue against the defendant's motion in that case and the motion was granted. (Doc. 1, p. 34). *See Lewis v. Casey,* 518 U.S. 343, 349, 340 (1996); *Christopher v. Harbury,* 536 U.S. 403, 416 (2002); *Marshall v. Knight,* 445 F.3d 965, 969 (7th Cir. 2006). Accordingly, Count 11 survives screening.

**Count 12**

The Seventh Circuit has held that "[t]he free-speech clause of the First Amendment applies to communications between an inmate and an outsider". *Zimmerman v. Tribble,* 226 F.3d 568, 572 (7th Cir. 2000). With respect to general mail communications, a valid First Amendment claim requires an allegation that there has been "a continuing pattern or repeated occurrences" of denial or delay of mail delivery. *Zimmerman,* 226 F.3d at 572 (7th Cir. 2000). In the Complaint, Plaintiff details repeated instances in which his mail was allegedly mishandled by Potocki and John/Jane Does 6-10. Accordingly, Count 12 will proceed. *See Antonelli v. Sheahan,* 81 F.3d 1422, 1432 (7th Cir. 1996).

**Count 13**

Plaintiff claims Defendants Potocki and John/Jane Does 5-10 violated his Fourth Amendment right to be free from unreasonable search and seizure in the mishandling of his mail. (Doc. 1, p. 50). A prisoner has no reasonable expectation of privacy under the Fourth Amendment while incarcerated. *See Hudson v. Palmer,* 468 U.S. 517, 527-28 (1984); *Smith v. Clendenin,* No 16-cv-664-MJR, 2016 WL 5243032, at * 7 (S.D. Ill. Sept. 22, 2016). Rather, a prisoner's right to send and receive mail is protected under the First Amendment as previously discussed. Therefore, Count 13 will be dismissed.

### Counts 14 and 15

Plaintiff brings claims against Defendants for violations of Illinois statutory law and regulations. But Illinois courts have held that prison regulations were "*never* intended to confer rights on inmates or serve as a basis for constitutional claims[,]" *Ashley v. Snyder,* 316 Ill. App. 3d 1252, 1258 (Ill. App. Ct. 2000), and a statutory or administrative code violation does not constitute a constitutional violation upon which a civil rights claim may rest. Additionally, federal courts do not enforce state law and regulations. *See Pasiewicz v. Lake Cty. Forest Preserve Dist.* 270 F.3d 520, 526 (7th Cir. 2001); *Gujardo-Palma,* 622 F.3d at 806. Therefore, Counts 14 and 15 will be dismissed.

### Request for Preliminary Relief

In his requests for relief, Plaintiff asks the Court to "preliminarily enjoin" certain defendants from subjecting him to the illegal and unconstitutional conditions, acts, omissions, policies and practices, as detailed in the Complaint. (Doc. 1, p. 45, 49, 51). However, he did not file a separate motion for a preliminary injunction or set forth the reasons he is entitled to immediate relief under Rule 65(a) of the Federal Rules of Civil Procedure. Accordingly, to the extent Plaintiff is seeking a preliminary injunction, his request is denied at this time without prejudice. If Plaintiff wishes to formally request a preliminary injunction or a temporary restraining order while this action is pending, he must file a separate motion and brief pursuant to Rule 65. He should specifically indicate the interim relief he seeks and the grounds that support his request for relief in the motion and supporting brief.

### Identification of Unknown Defendants and Official Capacity Claims

As previously noted, Plaintiff will be allowed to proceed with Counts 11 and 12 against mailroom staff Defendants John/Jane Does 6-10. However, these defendants must be identified with particularity before service of the Complaint can be made on them. Plaintiff will have the opportunity to engage in limited discovery to ascertain their identity. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Once the names of these individuals are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case

caption and throughout the Complaint. In that vein, the Warden of Vienna Correctional Center, Mathew Swalls, will remain a party in this action, in his official capacity only, and shall be responsible for responding to discovery aimed at identifying these unknown defendants and implementing any potential order for injunctive relief. *See Gonzalez v. Feinerman,* 663 F.3d 311, 315 (7th Cir. 2011).

Finally, the Court notes that Plaintiff asserts his claims against the remaining defendants in their official and individual capacities. Because state officials named in their official capacities may not be sued for monetary damages, *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989), and Defendant Swalls remains a party in his official capacity, allowing Plaintiff to proceed with an official capacity claim against Defendants Ethridge-Hicks, McCann, Potocki, and John/Jane Does 6-10 for injunctive relief would be redundant. Therefore, the official capacity claims against these defendants will be dismissed with prejudice.

## Motion for Recruitment of Counsel

Plaintiff has filed a Motion for Recruitment of Counsel (Doc. 8), which is **DENIED**.[3] Plaintiff discloses four unsuccessful efforts to contact attorneys via written correspondence. Accordingly, he appears to have made reasonable efforts to retain counsel on his own. With respect to his ability to pursue this action *pro se*, Plaintiff indicates that he has no legal training and expresses concern about his ability to prosecute the case given the complex constitutional issues and number of defendants. Nonetheless, the Court finds that Plaintiff can proceed *pro se*, at least for now. Plaintiff's pleadings demonstrate an ability to construct coherent sentences and relay information to the Court. Plaintiff appears competent to try this matter without representation at this time. Once discovery has commenced, if Plaintiff has significant difficulty, he may refile his motion.

---

[3] In evaluating Plaintiff's Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

**Disposition**

*Severance and Transfer*

**IT IS HEREBY ORDERED** that **COUNTS 1, 2, 3, 4, 5,** and **6** are **SEVERED** into a new case against **JOHN BALDWIN, KESS ROBERSON, BUTLER-JONES, MITTLEMAN, PATRICK T. SINGLETON, SHERRY BENTON,** and **JOHN/JANE DOES 1-5**. In the new case, the Clerk is **DIRECTED** to file the following documents:

- The Complaint (Doc. 1);
- Plaintiff's Application for Leave to Proceed *in forma pauperis* (Doc. 2);
- Plaintiff's Motion for Recruitment of Counsel (Doc. 8); and
- This Memorandum and Order.

Once that case has been opened, pursuant to 28 U.S.C. §§ 1391(b) and 1404(a) and on the Courts on motion, it shall be **TRANSFERRED** to the United States District Court for the Central District of Illinois for such further proceedings as that court may deem appropriate. No summons shall issue in this action unless so directed by the transferee court.

**IT IS FURTHER ORDERED** that the **only claims remaining in this action, are COUNTS 7 through 15**. The Clerk of Court is **DIRECTED** to terminate **KESS ROBERSON, BUTLER-JONES, MITTLEMAN, PARTICK T. SINGLETON,** and **KOONTZ** as parties in this action.

*Merits Review Counts 7-15*

**IT IS HEREBY ORDERED** that the Complaint survives screening pursuant to § 1915A. **COUNT 7** shall proceed against **ETHRIDGE-HICKS** and **MCCANN,** but is **DIMISSED** without prejudice as to **HOUSTON, LONG, POTOCKI**, and **JOHN/JANE DOES 6-10**. **COUNTS 11** and **12** shall proceed against **POTOCKI** and **JOHN/JANE DOES 6-10.** All claims against **ETHRIDGE-HICKS, MCCANN, POTOCKI,** and **JOHN/JANE DOES 6-10** in their official capacities are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that **COUNTS 8, 9, 10, 13, 14,** and **15** are **DISMISSED** without prejudice. Because there are no other claims against them, **BALDWIN, BENTON,**

16

**JOHN/JANE DOE 1-5, BARWICK, LUCE, HOUSTON,** and **LONG** are **DISMISSED** from this action without prejudice. The Clerk of Court is **DIRECTED** to terminate these individuals from the Case Management/Electronic Filing "CM/ECF" system. **SWALLS** shall remain as a Defendant in his official capacity only, as Warden of Vienna Correctional Center.

**IT IS FURTHER ORDERED** that the Motion for Recruitment of Counsel (Doc. 8) is **DENIED without prejudice.**

**IT IS FURTHER ORDERED** the Clerk of Court shall prepare for **ETHRIDGE-HICKS, MCCANN, POTOCKI,** and **SWALLS** (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on the unknown defendants, **JOHN/JANE DOES 6-10**, until such time as Plaintiff has identified each by name in a properly filed motion for substitution. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

**Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.**

This entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

**IT IS ALSO ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, even though his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: 11/18/2019**

     *s/Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days or more.** When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**